### *JAMES NORTHCOTT v. DAVID D. SMITH.

1. COMMON LAW RIGHT TO DISTRAIN DOES NOT EXIST IN OHIO.

Cattle belonging to S. broke through a partition fence into N.'s crops. N. drove them into his barn and refused to deliver them to S. until he paid the damages. S. replevined them and it was held that the right to distrain cattle "damage feasant" as at common law does not exist in this state.

*This decision is approved by the circuit court in Rudi v. Lang, 5 Ohio Circ. Dec., 483.

ERROR to the Court of Common Pleas of Portage county.

It appears from the record that David D. Smith commenced in the court of common pleas of Portage county an action in replevin against James Northcott to recover possession of four head of horses.

The defendant, James Northcott, admitted that he did detain from the plaintiff David D. Smith the identical animals described in the petition, and sought to justify their detention for, that on the 27th day of July, 1889, he was in the possession and occupancy of certain real estate in Portage county, having oats and other crops growing thereon, which was adjoining the real estate of plaintiff, and separated therefrom by a partition fence. The horses were not at large upon the public highway, nor upon unenclosed land.

That on said day, about five or six o'clock in the morning, defendant found plaintiff's horses in his, the defendant's, enclosure, and in his oat field and orchard, eating and tramping down his oats and apples, and damaging his crops; and that they were there without the consent or fault of defendant; that they had then and there damaged defendant to the amount of ten dollars.

That thereupon he immediately, and while said horses were in the very act of damaging and destroying said oats and apples and crops, in the very commission of said damage, took up said stock and put them in his, defendant's, barn, on said premises, and kept them until plaintiff came for them about seven o'clock the same morning.

That he notified plaintiff that he could have the horses if he would pay the damage which they had just done, amounting to ten dollars, but he could not have them until he did so; and that he, defendant, claimed the right, and intended to hold them for said damage, but was ready to give them up as soon as that was paid.

That plaintiff did not pay, or offer to pay, any sum for said damage, or otherwise (but said he would not pay a cent), and demanded his horses; which the defendant refused to surrender until he was paid said damage. And thereupon plaintiff, being unable to get his horses as demanded without paying the damage, went away, and about three o'clock the same day the sheriff took the horses upon a writ of replevin, issued in this action, and delivered them to plaintiff.

The parties having rested their case, and before submission to the jury, the defendant asked the court to charge the following:

"If the horses were trespassing upon the premises and doing damage to the crops of Northcott he had a right to take them up, and hold them until he was paid, or tendered a reasonable sum for the damage done at the time."

Which the court refused to give, and the defendant excepted.

The defendant also asked the court to charge the jury:

"If Northcott found the horses in his oats and crops, doing damage to said crops, he might take them up and would have a lien on them for the damage done."

Which the court refused to give, and the defendant excepted.

The defendant also asked the court to charge the jury:

"If the jury find that the horses were taken up while doing damage to Northcott's crops, then it would be the duty of Smith, the plaintiff, to tender a proper remuneration for the damage done, if Northcott required it, and if Smith replevied the horses without such tender, then the jury should find for the defendant."

Which the court refused to give, and the defendant excepted.

And thereupon the court proceeded to charge the jury among other things:

"As matter of law, although the defendant Northcott may have taken up the horses at the time they were trespassing upon the lands occupied by him, and were engaged in destroying his crops, yet Northcott, although he had the right to take up the horses and put them in the barn, did not have the right to retain and keep possession of the horses (as against the demand of plaintiff) until such damage should be paid or secured to him; he was bound, so far as the damages were

concerned, if demand was made by Smith, to at once surrender the horses, although Smith may have refused to pay said damage."

To which charge as given defendant excepted. . The jury returned a verdict for plaintiff and a motion for new trial was overruled, and Northcott files his petition in error to reverse the judgment of the court of common pleas. .

FRAZIER, J.

The only question presented by learned counsel is whether the common law right to distrain animals taken damage feasant is in force in this state.

Counsel for plaintiff in error insists that the right exists and is in full force in Ohio.

Counsel for defendant in error does not contend that if the common law right to distrain is in force in this state, that the plaintiff brings himself within the rule as it exists at common law, but insists that the common law right is not in force in this state.

By the common law, if the cattle of one man stray upon the land of another, thereby causing him damage, he may distrain and hold them until the damage is estimated and satisfied. The distress consists in taking the animals into custody while they are still upon the lands and impounding them until satisfaction is made. For the protection of the owner, notice to him of the distress is required, and if compensation is not agreed upon, disinterested appraisers are chosen to assess it. The detention of the animals is only for the purpose of indemnity, and they must be surrendered when satisfaction is made.

If this be the law in Ohio now, it has been since the first settlement of the state, and yet we find no reported case in which it has been asserted or claimed to exist. All kinds of stock not known to be breachy or unruly, or dangerous, have been allowed at all times, and in all parts of the state, to run at large, and the common understanding upon which the people of this state have acted since its first settlement, as well as the statutory regulations until a very recent period, has been that the owner of land was obliged to inclose it; and that without a lawful fence he could not, as against animals not known to be breachy, maintain an action for trespass thereon against the owner of such trespassing animals.

In the case of Kerwhacker v. Railroad Co., 3 O. S., 172, it is said the common law has been "recognized as a rule of decision in our courts, in the absence of legislative enactments, so far as its rules and principles appeared to be based on sound reason, and applicable to our condition and circumstances. The common law has no authority in Ohio, except so far as it derives authority from judicial recognition in the practice and course of adjudication in our courts; and this extends no farther than it illustrates and explains the rules of right and justice as applicable to the circumstances and institutions of the people of the state."

The case of Phelps v. Cousins, 29 O. S., 135, decides that "a part owner of a partition fence who fails to keep in repair the part assigned to him, whereby stock from the adjacent inclosure breaks and enters upon his lands, is without remedy. If the stock doing damage in such case be breachy, or unruly, the party damaged, in order to recover therefor, must show that the defect in his part of the fence was not the proximate cause of the damage."

In Cooley on Torts, page 58, it is said: "The right to distrain cattle damage feasant may be affected by statutory regulations making it the duty of the owner of the land to inclose his premises with a fence sufficient for their protection. Where adjoining owners are required by law to construct and maintain respectively a certain portion of the partition fence between them, and one neglects this duty, and the cattle of the other enter his premises in consequence, he is precluded from maintaining an action because the default from which the injury flows is his own."

The case of Dickson v. Parker, 34 Am. Dec., 78, decides the right to distrain cattle damage feasant does not exist unless the owner of the cattle would be liable

to an action. And that where the enclosure was not a sufficient one under the law, the owner of the close had no authority to take the means of redress into his own hands and distrain for any injury he may have sustained in consequence of such insufficiency.

At common law the liability of the owner is complete, and attaches when the animal is found trespassing on the land of another, and the only question is the amount of damage committed, and to secure its payment he may distrain.

In Ohio, under the former and present statutes, the owner was and is not liable to the landowner for the trespass of his animals, if the premises were not enclosed by a lawful fence; or if stock break and enter over a partition fence of which the person claiming damages be a part owner, he must, to recover, show that he kept in repair the portion of the fence assigned to him. Or, if the stock doing the damage be breachy or unruly, the party damaged, in order to recover therefor, must show that the defect in his part of the fence was not the proximate cause of the damage.

At common law all that was required to fix the liability of the owner was the trespass. But in this state other facts must be shown to fix his liability, and involving questions which he has the right to have submitted to and passed upon by a proper judicial tribunal before he is compelled to respond in damages.

We are of opinion that the right of the landowner to distrain and hold animals found trespassing upon his land until the damages are paid, as at common law, does not prevail in this state.

Judgment affirmed.

M. Stuart, for plaintiff in error.

I. T. Siddall, for defendant in error.